UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA ARENAS, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No.  SA-16-CV-01203-XR |
| JOHN CALHOUN, | § § § | |
| *Defendant*. | § § | |

### ORDER

On this date, the Court considered Defendant John Calhoun's Motion to Dismiss (Docket no. 5) and Motion to Stay Discovery (Docket no. 9). After careful consideration, the Court DENIES the motion to dismiss, and DISMISSES as moot the motion to stay discovery.

### BACKGROUND

Plaintiff Maria Arenas is the mother of Richard Tavara. Docket no. 1 at 1. Tavara allegedly suffered from severe mental illness *Id.* at 2–3. He had previously attempted suicide and been civilly committed due to these disabilities. *Id.* Unrelated to this past civil commitment, Tavaras was later incarcerated at Smith State Prison in Tattnall County Georgia. *Id.* at 2. While incarcerated at Smith, Tavara committed suicide. *Id.* at 2.

Defendant John Calhoun was a correctional officer at Smith State Prison. *Id.* at 1. Arenas alleges that on December 7, 2014, Calhoun witnessed Tavara's suicide. *Id.* at 3. Arenas claims that Calhoun watched as Tavara tied his bedsheet around a sprinkler in the ceiling of the cell and began placing the other end of the ligature around his neck. *Id.* Calhoun allegedly did not enter the cell or call 911, but instead called for his supervisors and other officers. *Id.*

1

Arenas' complaint states that, "[a]ccording to GDOC records," one of Calhoun's supervisors, Sgt. Shelby, arrived at Tavara's cell eight minutes later, at which point Tavara had been and still was hanging from the ligature. *Id*. Another of Calhoun's supervisors, Lt. Dickson, allegedly arrived ten minutes after the original call, and ordered officers to open the cell door. *Id*. Arenas alleges that Calhoun did not call 911 to request emergency medical personnel until at least 15 minutes after he saw Tavara beginning to hang himself. *Id*.

Arenas sued Calhoun under 42 U.S.C. § 1983, alleging that Calhoun violated Tavara's Eighth and Fourteenth Amendment rights. *Id*. at 4. Her original complaint, filed in this Court on November 28, 2016, states that "Mr. Tavara had a clearly established right to be protected from his suicidal tendencies and not to have his serious medical needs treated with deliberate indifference. Rather than provide Mr. Tavara the medical care and treatment he desperately needed, and was known to need by Defendants Calhoun, he deliberately disregarded Mr. Tavara's condition, causing him to die." *Id*.

In lieu of filing an answer, Calhoun filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), asserting that (1) "[Arenas] fails to state a § 1983 deliberate indifference claim against Officer Calhoun," and (2) "Officer Calhoun is entitled to qualified immunity." Docket no. 5. With his motion to dismiss, Calhoun attached an "Incident Report" as factual support. Docket no. 5-1. This report from the Georgia State Department of Corrections describes Tavara's suicide and officers' responses. *See id*.

## DISCUSSION

### I. Legal Standards

#### a. 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

  b. **Documents to be Considered**

Before considering the merits of Calhoun's motion, the Court must determine the scope of documents that it can consider in light of the incident report that Calhoun attached to his motion to dismiss. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). Calhoun relies on an exception to this rule which allows a court to consider not only the complaint and any documents attached to it, but also documents attached to a motion to dismiss that are both referenced by the plaintiff's complaint and central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). In particular, Calhoun argues that the complaint's two references to "GDOC records" invite him to attach GDOC records to his motion. *See* Docket no. 1 ("According to GDOC records, it took Shelby approximately eight minutes to arrive at Mr.

Tavara's cell . . . According to GDOC records, it took Dickson approximately ten minutes to arrive at Mr. Tavara's cell.").

As an initial matter, it is unclear whether the complaint actually references the incident report that Calhoun includes with his motion to dismiss. The complaint refers merely to "GDOC records" without further specificity. More importantly, Calhoun makes only the conclusory argument that "the factual statements in the incident report are central to [Arenas'] Eighth Amendment claim." At most, the incident report appears to be one piece of evidence to support Arenas' claims. It is difficult to characterize this significance as "central to Arenas' claim," particularly where the cases cited by Calhoun on this point approve the use of evidence outside of the pleadings that is essentially uncontroverted or dispositive of the motion. In one of these cases, the Fifth Circuit affirmed the district court's finding that a business could not be held liable under 42 U.S.C. § 1981 for the allegedly discriminatory actions of another business where the former submitted a contract outside the pleadings showing that the two were separate and exercised no control over one another. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290. In another of Calhoun's cases, the Fifth Circuit affirmed a district court's consideration of insurance contracts attached to a motion to dismiss an action based on those policies.[1] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 196 (5th Cir. 2007).

---

[1] In the third case cited by Calhoun, the Fifth Circuit *reversed* the district court for failing to convert a Rule 12(b)(6) motion into a motion for summary judgment when considering evidence attached to the plaintiff's opposition to the 12(b)(6) motion. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).
  In a reply in support of his motion to stay discovery, Calhoun again urges the Court to consider the incident report or to disregard it and not convert the motion to dismiss into a motion for summary judgment. Docket no. 9. Here, Calhoun cites two additional cases, but they are just as far afield as those cited in his original briefing. In *Franks v. Prud. Health Care Plan, Inc.*, 164 F. Supp. 2d 865, 871–72 (W.D. Tex. 2001), the court considered documents that were part of a health insurance plan upon which the plaintiff based his cause of action; the incident report is not nearly as central to Arenas' claims as the very plan documents that were sued upon in *Franks*. In *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440–41 (5th Cir. 2015), the Fifth Circuit approved consideration of police officers' affidavits summarizing an incident after the plaintiff filed an amended complaint that specifically incorporated parts of these affidavits; Arenas' complaint was not amended to specifically rely on the facts set forth in the incident report, nor does the original complaint do so.

The incident report, far from being central to Arenas' contentions, simply recites one version of the facts. Because it does not satisfy the Fifth Circuit's well-recognized exception to Rule 12(d), the Court must either disregard the report, or convert the motion to dismiss into a motion for summary judgment. The Court chooses to disregard the report.

### c. Standards Governing Calhoun's Arguments for Dismissal

Calhoun argues that dismissal is warranted because (1) "[Arenas] fails to state a § 1983 deliberate indifference claim against Officer Calhoun," and (2) "Officer Calhoun is entitled to qualified immunity." Docket no. 5. "[L]itigants and the courts understandably struggle with the relationship" between aspects of these inquires. *Nunez v. Deviney*, CIVA 4:06CV0579 BE, 2007 WL 2059726, at *4 (N.D. Tex. July 17, 2007). Because of the conceptual and linguistic overlap between these standards, the Court takes a moment to clarify its methodology.

### i. Deliberate Indifference Standard

The Eighth Amendment[2] provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*." U.S. CONST. amend. VIII (emphasis added). This Amendment, which has come to "encompass broad and idealistic concepts of dignity, civilized standards, humanity, and decency," imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Anderson v. Dallas Cty. Tex.*, 286 F. App'x. 850, 857 (5th Cir. 2008) (internal quotations and citations omitted). Under this requirement, "[i]t is . . . clear that a failure to provide adequate protection against a prisoner's known suicidal impulses is actionable. *Id*.

---

[2] Arenas' complaint alleges that Calhoun is liable for violating Tavara's rights under the Eighth *and* Fourteenth Amendments. Docket no. 1 at 4. This statement does not appear to be an invocation of substantive rights under the Fourteenth Amendment. Instead, the Court reads the complaint as invoking the Eighth Amendment's guarantees against cruel and unusual punishment, which are made applicable to the states by operation of the Fourteenth Amendment. *See Hinojosa v. Livingston*, 807 F.3d 657, 654–55 n.5 ("The complaint invokes the Fourteenth Amendment simply because it is by that provision—and that provision alone—that the Eighth Amendment's guarantee applies against the States; the Eighth Amendment does not apply of its own force to the States.").

5

The Supreme Court has held that a prison official can only be liable for violations of the Eighth Amendment if he acts with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official acts with deliberate indifference when he "knows of *and disregards* an excessive risk to inmate health or safety." *Id*. (emphasis added). The Fifth Circuit has adopted the *Farmer* formulation for a prison official's deliberate indifference towards inmates' and detainees' right to medical care and protection from harm, which is at issue in this case. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647 (5th Cir. 1996).

As this language indicates, deliberate indifference has two parts: first, the official must be subjectively aware of the risk of harm, and second, the official must disregard that risk by failing to take reasonable measures to abate it. *Id*.; *see also Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (conducting these two inquiries separately and affirming a district court's grant of summary judgment against the family of an inmate who committed suicide because the officer's response to a known risk of harm was reasonable). Stated differently, "[d]eliberate indifference occurs when an official (1) has a subjective knowledge of a substantial risk to an inmate's health or safety, and (2) *responds* with deliberate indifference to that risk." *Jones v. Throckmorton Cty., Tex.*, CIV.A. 1:02-CV-182-C, 2004 WL 419811, at *4 (N.D. Tex. Mar. 8, 2004) (emphasis added) (citing *Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000)). Under the deliberate indifference standards, "whether prison officials consciously disregarded the risk represents a subjective [test]." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). In addition, it is clear that deliberate indifference is a higher standard than negligence, but need not rise to the level of purpose or knowledge. *See Farmer*, 511 U.S. at 836; *Lewis v. Brazzel*, 316 F. App'x. 334, 336 (5th Cir. 2009).

Calhoun does not argue that he lacked subjective awareness of the risk of harm; instead, Calhoun focuses on the second portion of *Farmer* by asserting that his responses to the known risk of harm "were reasonable, such that he did not violate the Eighth Amendment." Docket no. 5 at 5.

### ii. Qualified Immunity Standard

Turning to qualified immunity, so long as the conduct of a government official performing discretionary functions does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," the official is protected from civil liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). After a defendant asserts qualified immunity as a defense, the burden is on the plaintiff to negate qualified immunity. *Hyatt*, 843 F.3d at 177. To plead above this burden, courts conduct a two-step inquiry: "First, [a plaintiff] must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (internal citations omitted). "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998) [hereinafter "*Hare III*"].

### iii. Interplay between Qualified Immunity and Deliberate Indifference

A comparison of these two separate legal standards reveals an overlap—language from both indicates that an assessment of an officer's response to the risk of harm is determinative.

7

Despite this language, "[t]he Fifth Circuit has taken pains to point out that the 'objectively unreasonable' analysis [in the qualified immunity context] is not the same as the 'deliberate indifference' analysis seen in the Eighth Amendment context." *Gray v. Brazoria Cty.*, 3:16-CV-109, 2017 WL 713797, at *6 (S.D. Tex. Feb. 23, 2017). As the Fifth Circuit has explained:

> The qualified immunity defense requires the district court to determine whether Defendants acted reasonably at the time of the alleged constitutional violation, and this determination is complicated when, as here, the deliberate indifference standard must be reconciled with [qualified immunity's] objective reasonableness standard. The reasonableness analysis must be different from the deliberate-indifference analysis, because otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine. In light of these complexities, we have observed that additional facts are particularly important when evaluating the reasonableness prong of the qualified immunity test. That holds true in this case. The district court did not err in determining that factual development was needed to rule on Defendants' qualified immunity defense.

*Hinojosa*, 807 F.3d at 672 (internal citations, quotations, and alterations omitted).

*Hinojosa* sets forth that there *is* a difference between these two inquiries, but earlier cases established the contours of that difference:

> In [*Hare III*, 135 F.3d at 328], we explained the somewhat confusing relationship between the deliberate indifference and objective reasonableness standards as follows: ". . . for [an] appeal on qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident . . . . And under that standard—the minimum standard not to be deliberately indifferent—the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable." *Hare III*, 135 F.3d at 328. In other words, we are to determine whether, in light of the facts as viewed in the light most favorable to the plaintiffs, the conduct of the individual defendants was objectively unreasonable when applied against the deliberate indifference standard. *See id.* at 329.

*Jacobs*, 228 F.3d at 394 (5th Cir. 2000).

The Fifth Circuit contemplates that these inquiries will be separate, but Calhoun does not assert that he lacked knowledge of the risk of harm. Thus, the only remaining prong on the

8

deliberate indifference analysis is whether Calhoun responded with indifference to the risk. This implicates the same facts as the qualified immunity analysis, which assesses "the actions of the individual defendants . . . to determine whether, as a matter of law, they were objectively unreasonable" in light of the minimum standard to not be deliberately indifferent. On this motion, where the Court can consider only Arenas' complaint, both analyses boil down to whether Arenas has adequately pled facts establishing the inadequacy of Calhoun's response. Nevertheless, the Court will separate these two portions of its analysis for clarity, recognizing that there will be some redundancy in the recitation of the facts.

## II. Application

The factual allegations before the Court on this motion to dismiss are straightforward. To restate these allegations, which are taken as true, Calhoun watched Tavara preparing to hang himself and then watched Tavara hang himself. Calhoun did not enter Tavara's cell. Calhoun called his supervisors. Calhoun called 911 approximately 15 minutes after he first saw Tavara beginning to hang himself. These are the only facts that the Court can consider, and the Court must construe these facts in the light most favorable to Arenas.

With only these facts in mind, the Court denies Calhoun's motion to dismiss on both grounds. Particularly important to this decision is the early stage of this litigation. On a record so undeveloped, there is no meaningful way to assess Calhoun's conduct. Indeed, the vast majority of decisions cited in Calhoun's briefing reach their conclusions at the summary judgment phase, after some amount of discovery has developed the facts in the case.

### a. Arenas has adequately pled a claim for deliberate indifference.

The allegations in the complaint are simple and clear—Calhoun watched Tavara hang himself, and responded only by yelling to Tavara and later calling his supervisors. In terms of

deliberate indifference claims arising out of an inmate suicide, this case is unique. Calhoun allegedly witnessed the suicide from start to finish. *See* Docket no. 1 at 1–3. In the more typical case, a prison official knows of an inmate's suicidal tendencies, but leaves the inmate unsupervised and with the means to commit suicide. *See, e.g., Hare III*, 135 F.3d at 322–23. The typical situation is actionable through a deliberate indifference claim. *E.g., id*. It is difficult to imagine how a plaintiff could state a claim for deliberate indifference where a guard leaves an inmate unsupervised, but not make out a similar claim for exercising deliberate indifference while actively (but inadequately) supervising that same inmate.

Assuming the facts alleged are true, Calhoun disregarded the substantial risk of harm facing Tavara, which was so immediate that Tavara would die within minutes without assistance. Calhoun's alleged response of calling his supervisors and taking no physical action with respect to Tavara plainly disregarded the risk of suicide. Without more developed facts, the Court cannot say "as a matter of law[ ] that Officer Calhoun's actions . . . were reasonable, such that he did not violate the Eighth Amendment," as Calhoun urges. Docket no. 5 at 5.

Calhoun argues that his actions were reasonable based on a prison policy that prohibited him from entering Tavara's cell. Docket no. 5 at 5–6 ("While Officer Calhoun may, at most, have been negligent by not breaking policy and entering the cell alone, mere negligence is insufficient to establish deliberate indifference."). A more developed record may well bear out this conclusion. On the basis of Arenas' pleadings, and without any discovery related to the contours of that policy, the relevant prison conditions (including those of Tavara's cell), Tavara's physical condition, the status and location of other prison officials, and the precise details of Tavara's suicide, the Court cannot declare that, as a matter of law, Calhoun acted reasonably.

### b. Qualified immunity does not warrant dismissal at this stage.

Recapping the qualified immunity standard stated above, the Court must determine: (1) whether Arenas alleges that Calhoun committed a constitutional violation under current law; and (2) whether the law is clearly established and if so, whether Calhoun's conduct was unreasonable in light of that law. *See Atteberry*, 430 F.3d at 253. On the first prong, for the same reasons that Arenas has adequately pled a claim for deliberate indifference, the Court finds that she satisfies this prong of the qualified immunity analysis.

Turning to the second prong, when Tavara committed suicide in December 2014, it was clearly established that prison officials had a constitutional duty to respond without deliberate indifference to inmates' serious medical needs, including their suicidal tendencies. *Jacobs*, 228 F.3d at 393–94 ("[W]e have observed that at least since 1989, it has been clearly established that officials will only be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights if they had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." (internal quotations omitted)). Thus, the Court must determine whether "in light of the facts as viewed in the light most favorable to the plaintiff[ ], the conduct of the individual defendant[ ] was objectively unreasonable when applied against the deliberate indifference standard." *Jacobs*, 228 F.3d at 394; *see also Hare III*, 135 F.3d at 326.

Calhoun argues that "regardless of whether a constitutional violation occurred, there is no controlling precedent that would have put Officer Calhoun on notice that he was violating the decedent's rights" because, although it is clearly established that prison officials must take measures to prevent inmate suicides, the law does not clearly establish what those measures are. Docket no. 5 at 7. He quotes *Hyatt* for the proposition the Fifth Circuit has not established with

11

any clarity what measures must be taken by a prison official in order to avoid losing the defense of qualified immunity. *See id.* (quoting *Hyatt*, 843 F.3d at 179–80). *Hyatt* drew this language from *Hare III*, in which the court first found that the law was clearly established as to a prison official's duty to not be deliberately indifferent towards an inmate's risk of suicide and then found that the officer's response was not objectively reasonable in light of that clearly established law. *See Hare III*, 135 F.3d at 328–29. Thus, Calhoun confuses what must be clearly established—because the standard of deliberate indifference toward inmate suicide is clearly established, Calhoun's response is only analyzed in terms of whether it is objectively unreasonable in light of that law. In other words, it need not be "clearly established" that Calhoun's conduct was "objectively unreasonable," but rather, his conduct must be "objectively unreasonable" in light of the clearly established deliberate indifference standard.

"Needless to say, in this context, the objective reasonableness standard does not afford a simple bright-line test." *Hare III*, 135 F.3d at 328–29. Again, though, the early stage this case and the factual record before the Court makes this a straightforward inquiry. Calhoun's actions, based on the factual allegations in Arenas' complaint, are objectively unreasonable in light of the clearly established law. A reasonable officer would understand that the risk of suicide before him in Tavara's case would require quick action—within mere minutes, Tavara could be and in fact was dead. As alleged, this situation called for an immediate physical response, not the wait-for-backup approach alleged by Arenas.

The Court takes note of Calhoun's justification for his actions. Calhoun again states that a prison policy prevented him from entering Tavara's cell alone. Docket no. 5 at 8. He argues that he could have been subject to discipline for violating this policy, or that Tavara may have been faking the suicide attempt in an attempt to lure Calhoun into his cell and attack him. *Id.* at 8–9.

Again, however, these are not facts in the record for the Court to consider. The Court has no information regarding GDOC's non-entry policy. Though the discovery process may reveal facts that vindicate Calhoun's qualified immunity analysis, the complexities of undertaking the objective unreasonableness analysis alongside the deliberate indifference analysis prevents the Court from finding that Calhoun is entitled to qualified immunity at this time. *Cf. Hinojosa*, 807 F.3d at 672 ("In light of these complexities, we have observed that additional facts are particularly important when evaluating the reasonableness prong of the qualified immunity test."). For this reason, the Court makes clear that the denial of Calhoun's motion to dismiss is without prejudice to his ability to bring the same argument on an appropriate motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant Calhoun's Motion to Dismiss (Docket no. 5) is DENIED. Because Calhoun's Motion to Stay Discovery (Docket no. 9) requests only that the Court stay discovery until the motion to dismiss is ruled upon, the motion to stay is DISMISSED as moot. This denial of Calhoun's motion to dismiss is without prejudice to his ability to bring the same arguments at the summary judgment phase.

It is so ORDERED.

SIGNED this 20th day of March, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE