# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| MARIA ARENAS, individually, § § *Plaintiff*, § § v. § § JOHN CALHOUN, in his individual § capacity, § § *Defendant*. § | Civil Action No. SA-16-CV-1203-XR |

## ORDER ON MOTION TO TRANSFER VENUE

On this date, the Court considered Defendant John Calhoun's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Docket no. 24. Defendant requests that this case be transferred to the Southern District of Georgia, Savannah Division, where Plaintiff has sued other parties involved in this matter. After careful consideration of Defendant's motion, Plaintiff's response (Docket no. 27), and the relevant law, this Court **DENIES** Defendant's Motion to Transfer Venue.

## BACKGROUND

Plaintiff Maria Arenas is the mother of Richard Tavara, deceased. Docket no. 1 at 1. Tavara had a history of severe mental illness, including civil commitment and attempted suicide. *Id.* at 2–3. On the night of December 7, 2014, Tavara, while incarcerated at Smith State Prison in Tattnall County Georgia, took his own life. *Id.* at 2.

Defendant John Calhoun, at the time of the incident, was employed by Smith State Prison as a correctional officer. *Id.* at 1. Plaintiff alleges that Defendant witnessed Tavara attempting

to hang himself by tying one end of his bedsheet around a sprinkler on the ceiling of his cell and the other end around his neck. *Id.* at 3. Defendant instructed Tavara to stop and made four calls over the radio to his supervisors and other officers for assistance. Docket no. 5 at 2. While waiting for his supervisors to arrive, Defendant did not enter Tavara's cell. Docket no. 1 at 3; Docket no. 5 at 2. Defendant maintains that prison policy prevented him from entering Tavara's cell until assistance arrived. Docket no. 5 at 2. The first supervisor, Sgt. Shelby, did not arrive at Tavara's cell until eight minutes after Defendant made the call on the radio, and the second supervisor, Lt. Dickson, did not arrive until ten minutes after Defendant made the call. Docket no. 1 at 3. Upon his arrival, Lt. Dickson instructed Defendant to open Tavara's cell door. Docket no. 1 at 3; Docket no. 5 at 2. Once the cell door was opened, assisting officers lowered Tavara to the floor and administered CPR until medical personnel arrived. Docket no. 5 at 2. Plaintiff alleges that Defendant did not contact EMS until at least fifteen minutes after he first witnessed Tavara attempting to hang himself. Docket no. 1 at 3. By the time medical personnel arrived on the scene, more than thirty minutes had elapsed from the point which Defendant first witnessed Tavara attempting to hang himself. *Id.*

On November 28, 2016, Plaintiff filed suit against Defendant, in his individual capacity, in this Court under 42 U.S.C. § 1983, alleging that Defendant's inactions related to Tavara's suicide constituted deliberate indifference and violated Tavara's Eighth and Fourteenth Amendment rights. *Id.* at 4. Because Defendant had since moved from Georgia to Texas, venue is proper in this Court under 28 U.S.C. § 1391(b)(1). *See* 28 U.S.C. § 1391(b)(1) (permitting a civil action to be brought in "a judicial district in which any defendant resides"). Plaintiff has also filed a companion suit against Defendant's supervising officers in the Southern District of

Georgia. *Arenas v. Georgia Dep't of Corr., et al.*, CV 4:16-320, 2017 WL 1754770, at *1 (S.D. Ga. May 3, 2017); Docket no. 24 at 2; Docket no. 25 at 3. Considering Plaintiff's companion case, venue is proper in the Southern District of Georgia under 28 U.S.C. § 1391(b)(2) because all of the events giving rise to Plaintiff's claims took place in the Southern District of Georgia. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Defendant, pursuant to 28 U.S.C. § 1404(a), requests that this Court transfer the instant action to the Southern District of Georgia, Savannah Division, where the companion case is currently pending.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold issue under § 1404(a) is whether the civil action "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Once it is established that a civil action could have been brought in the destination venue, § 1404(a) gives the district court discretion to decide whether transfer is appropriate by balancing case-specific factors concerning the parties' private interests in convenience and the public interest of fair administration of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Robinson v. Hillcrest Baptist Med. Ctr.*, No. A-09-CA-640-SS, 2009 WL 4639901, at *2 (W.D. Tex. Nov. 30, 2009) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* It is important to note that these private and public interest factors are neither exhaustive nor exclusive, and no one factor holds dispositive weight. *Volkswagen*, 545 F.3d at 315.

Additionally, Fifth Circuit case law has considered a party's delay in requesting transfer and whether the party requesting transfer has done so with reasonable promptness as peripheral influences when determining whether to transfer a case. *See, e.g.*, *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003) ("[I]n rare and special circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer."); *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) ("Parties seeking a change of venue should act with 'reasonable promptness.'"); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 (E.D. Tex. 2000) ("If a litigant resisting transfer successfully shows the Section 1404(a) transfer motion is a dilatory tactic, or that it would be prejudiced solely because of the delay in bringing the motion, then the litigant moving for transfer has failed to show 'reasonable promptness' in bringing his transfer motion.").

The burden to show good cause for transfer rests on the moving party. *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). To succeed on a motion to transfer venue, the moving party must show that, based on the public and private interest factors, the transferee venue is "*clearly* more convenient than the venue chosen by the plaintiff." *Volkswagen*, 545 F.3d at 315 (emphasis added). The moving party must provide the court with enough information to balance the parties' interests. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). Therefore, unless Defendant has provided this Court with sufficient information that, based on the public and private interest factors, the Southern District of Georgia is *clearly* a more convenient venue to hear this case, Plaintiff's original venue determination should be given deference. *See Volkswagen*, 545 F.3d at 315 ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.").

## ANALYSIS

### a) Whether Plaintiff Might Have Brought Suit Against Defendant in the Southern District of Georgia

The preliminary inquiry is whether Plaintiff could have brought this suit against Defendant in the Southern District of Georgia. A party may bring suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Both parties agree that the events giving rise to this claim occurred at Smith State Prison in Tattnall County Georgia, which is located in the Southern District of Georgia. Docket no. 1 at 1; Docket no. 24 at 1. Because the events or omissions giving rise to Plaintiff's claim

occurred in the Southern District of Georgia, venue in the Southern District of Georgia would have been proper. *See* 28 U.S.C. § 1391(b)(2).

It is also important to consider whether the Southern District of Georgia would have had personal jurisdiction over Defendant. Because Defendant had moved to Texas by the time Plaintiff filed this suit, Defendant is a nonresident for the purposes of establishing the Southern District of Georgia's personal jurisdiction over him. Docket no. 24 at 1; Docket no. 27 at 2. Under Eleventh Circuit law, a court only has personal jurisdiction over a nonresident if both of the following prongs are satisfied: first, there must be a basis for asserting personal jurisdiction over the nonresident under the state's long-arm statute; and second, there must be sufficient minimum contacts between the nonresident and the state to satisfy the Due Process Clause of the Fourteenth Amendment. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Georgia's long-arm statute permits Georgia courts to "exercise personal jurisdiction over any nonresident" who "[c]ommits a tortious act or omission within [Georgia]." GA. CODE § 9-10-91.

Defendant falls within Georgia's long-arm statute because, at the time of his alleged tortious conduct, he was both a resident and an employee of the State of Georgia. *See* GA. CODE § 9-10-91; Docket no. 24 at 1; Docket no. 1 at 1. Furthermore, based on Defendant's residential and employment status at the time of the event in question, sufficient minimum contacts existed between Defendant and the State of Georgia such that Defendant should "reasonably anticipate being haled into court there" to answer allegations that he committed a tortious act or omission in Georgia. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Because Defendant meets the requirements of Georgia's long-arm statute and sufficient minimum contacts exist between Defendant and the State of Georgia, this Court determines that the

6

Southern District of Georgia would have had personal jurisdiction over Defendant if Plaintiff were to have initially filed suit against Defendant in the Southern District of Georgia. *See Madara,* 916 F.2d at 1514. Therefore, because the acts or omissions giving rise to Plaintiff's cause of action occurred in the Southern District of Georgia and the Southern District of Georgia could have exercised personal jurisdiction over Defendant, this Court determines that Plaintiff could have originally brought this suit against Defendant in the Southern District of Georgia. *See* 28 U.S.C. § 1391(b)(2); *Madara,* 916 F.2d at 1514.

Having established that Plaintiff could have originally brought this action against Defendant in the Southern District of Georgia, it is at the discretion of this Court to determine whether Defendant has shown that the Southern District of Georgia is "*clearly* more convenient than the venue chosen by the plaintiff" based on the balance of the public and private interest factors. *See* 28 U.S.C. § 1404(a); *Volkswagen*, 545 F.3d at 315 (emphasis added).

### b) The Private Interest Factors

#### i) Relative ease of access to sources of proof

Defendant asserts that "all of the documents and physical evidence relating to Tavara's suicide are located in the Southern District of Georgia," including "witnesses involved in responding to the suicide," and that "Plaintiff will not be able to identify any evidence that is found in San Antonio." Docket no. 24 at 6. However, although Defendant is correct that all evidence relating to Tavara's suicide is located in Georgia, Plaintiff's Complaint also seeks damages from Defendant based on the loss of her son's life. Docket no. 1 at 5. Plaintiff's damages witnesses and physical evidence related to damages are all located in Texas. Docket no. 27 at 8–9. Accordingly, both parties have evidence in locations that support their respective

7

positions on where this case should ultimately proceed. Docket no. 24 at 6; Docket no. 27 at 8–9. However, the presence of evidence in both locations does not make the balance of this factor neutral between the parties.

Cases from this Court have acknowledged that, due to technological advancements, information can be transferred across vast distances with great ease, thereby reducing the inconvenience of accessing certain types of evidence. *See*, *e.g.*, *Walker v. Stroman*, No. A-17-CA-235-SS, 2017 WL 2829702, at *3 (W.D. Tex. June 28, 2017) ("[T]his factor is not generally given much weight in the § 1404 analysis given the ease in which information can be transferred with today's technology."); *Tapia v. Dugger*, No. SA-06-CA-0147-XR, 2006 WL 2620530, at *4 (W.D. Tex. Sept. 7, 2006) ("Technological advances in copying, storing, and transferring data, however, limit the weight to be given the accessibility and location of sources of proof in the § 1404(a) analysis."); *see also Moss v. Lockheed Martin Corp.*, No. 3:10-CV-1659-M, 2011 WL 197624, at *3 (N.D. Tex. Jan. 18, 2011) ("Due to increasing technological advances, access to some sources of proof presents a lesser inconvenience than it once did; however, the fact that technology reduces the inconvenience does not render this factor superfluous."). Accordingly, the documentary and physical evidence that is located in the Southern District of Georgia, such as written statements regarding Tavara's suicide and video surveillance of the incident, is also conveniently accessible from Texas, especially because the parties to the companion suit in the Southern District of Georgia have agreed to share discovery between the two cases. *See* Docket no. 24 at 2, 6; Docket no. 27 at 9.

Furthermore, this Court requires a party requesting transfer, when arguing transfer is warranted based on the convenience of witnesses, to "specifically identify the key witnesses and

outline the substance of their testimony." *Mateos v. Select Energy Services, L.L.C.*, 919 F. Supp. 2d 817, 823 (W.D. Tex. 2013) (quoting *Hupp v. Siroflex of Am., Inc.,* 848 F. Supp. 744, 749 (S.D. Tex. 1994)). Defendant specifies "Sgt. Shelby, Lt. Dickson, Officer Haas, Officer Mitchell, and an undetermined representative of the Georgia Department of Corrections" as potential witnesses located in the southern District of Georgia, but does not outline the substance of their testimony. *See* Docket no. 24 at 6. This Court presumes that the testimony of each witness will be based on their personal knowledge of the event in question. See FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

The testimonies of the witnesses specified by Defendant are unlikely to reveal additional facts regarding the claims brought specifically against Defendant that either Defendant's own testimony or shared discovery would not establish if the case were to remain in this Court. *See* Docket no. 24 at 6; Docket no. 27 at 10–11. Additionally, Defendant's qualified immunity defense must focus on his own personal knowledge and actions, not those of anyone else. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (internal quotation marks omitted) ("The qualified immunity analysis thus is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question."). However, if this case were to be transferred to the Southern District of Georgia, Plaintiff's ability to call damage witnesses would be severely inconvenienced because of the substantial burdens associated with calling residents of Austin, Texas, to testify at a trial in the Southern District of Georgia. *See* Docket no. 27 at 8–9. Therefore, because Defendant may retain convenient access to his specified sources of proof

9

if this case were to remain in this Court, whereas Plaintiff's ability to call damage witnesses would be significantly inconvenienced if this case is transferred to the Southern District of Georgia, the Court finds this factor weighs against transfer.

### ii) Availability of compulsory process to secure the attendance of witnesses

A district court may issue a subpoena to command a person to attend a trial, hearing, or deposition only within 100 miles of where the person resides, is employed, or regularly transacts business, or within the state where the person resides, is employed, or regularly transacts business if the person is either a party, a party's officer, or is commanded to attend trial and would not incur substantial expense. FED. R. CIV. P. 45(c)(1).

Defendant is concerned that non-party witnesses, specifically the supervising and assisting officers, "who may testify concerning the response to Tavara's suicide" all reside in Georgia, well beyond the 100 mile range for subpoenas established by Rule 45, and thus cannot be commanded to testify by this Court. Docket no. 24 at 6. However, as stated above, the supervising and assisting officers' testimonies are likely to overlap and duplicate Defendant's own testimony because Defendant was the only officer to witness Tavara's suicide in its entirety; every other witnessing officer identified by Defendant arrived at a point in time after Defendant called for assistance on the radio. *See* Docket no. 5 at 2. Furthermore, if this case remains in this Court, Defendant would not be completely shut off from introducing the testimonies of the supervising and assisting officers because, as both parties acknowledge, these testimonies may be presented at trial in the form of a video deposition. Docket no. 24 at 7; Docket no. 27 at 10–11.

The scope of this case is narrower than the companion case currently pending in the Southern District of Georgia. In that case, Plaintiff is suing the supervising officers, Georgia Department of Corrections, and Georgia Correctional Healthcare for causes of action based on both the personal and the institutional handling of Tavara's suicide. *Arenas v. Georgia Dep't of Corr., et al.*, CV 4:16-320, 2017 WL 1754770, at *1 (S.D. Ga. May 3, 2017). In this case, where Plaintiff brings a claim against Defendant in his individual capacity for damages based on his own alleged deliberate indifference which contributed to the death of Plaintiff's son, the most significant witnesses are Plaintiff, Defendant, and those who will testify regarding damages. All of Plaintiff's damages witnesses currently reside in Austin, Texas, far beyond the 100 mile radius of the Southern District of Georgia's subpoena range. *See* Docket no. 27 at 8–9. Because transferring this case to the Southern District of Georgia would prejudice Plaintiff's ability to secure the attendance of damages witnesses more than Defendant's ability to present the testimonies of supervising and assisting officers, the Court finds that this factor weighs against transfer. *See* FED. R. CIV. P. 45(c)(1).

### iii) Cost of attendance for willing witnesses

"Convenience of the witnesses has been recognized as the most important factor under § 1404(a)," and the convenience of non-party witnesses is given "greater weight in the transfer of venue analysis." *Bascom v. Maxim Integrated Prods., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008) (internal quotation marks omitted). As previously stated, this Court requires a party requesting transfer based on the convenience of witnesses to "specifically identify the key witnesses and outline the substance of their testimony." *Mateos*, 919 F. Supp. 2d at 823. Defendant contends that there are "at least five known non-party witnesses who reside in

11

Georgia," and "transferring venue to the Southern District of Georgia will be of minimal inconvenience for Plaintiff" because Plaintiff will have to travel to the Southern District of Georgia anyway for a trial of the companion case. Docket no. 24 at 7. However, considering the overlap with Defendant's own testimony and that Defendant does not lose his ability to introduce this testimony at trial in this Court by means of video deposition or through shared discovery, the substance of the testimony of the witnesses identified by Defendant are of marginal importance to the claims against Defendant at issue in this case. *See* Docket no. 24 at 2, 7; Docket no. 27 at 10–11. Therefore, Defendant could conveniently introduce this evidence at trial in this Court without incurring any substantial additional expenses. *See id.*

Plaintiff, on the other hand, has identified specific damage witnesses residing in Austin, Texas, and retained local expert witnesses to testify concerning whether Tavara would have survived had Defendant assisted him before the supervising officers arrived, the reasonableness of Defendant's response to Tavara's suicide, and the value of Tavara's life, respectively. Docket no. 27 at 11–12. As previously noted, none of Plaintiff's witnesses may be compelled to testify at trial if this case were to be transferred to the Southern District of Georgia. *See* FED. R. CIV. P. 45(c)(1) (establishing a 100-mile radius for a district court's subpoena power to command a person to attend a trial, hearing, or deposition). Therefore, if this case were to be transferred to the Southern District of Georgia, Plaintiff would be severely inconvenienced in two ways: first, Plaintiff's non-party witnesses on damages would be deterred from testifying at trial in the Southern District of Georgia because of the burdens associated with travelling there; and second, Plaintiff would either have to pay the expenses for the experts to travel to Georgia to testify or Plaintiff would have to retain new and different experts who reside in Georgia. *See* (Docket no.

27 at 11–12). Because Plaintiff and her non-party witnesses would endure heavier costs associated with proceeding to trial in the Southern District of Georgia than Defendant would incur by continuing in this Court, the Court finds this factor weighs against transfer.

### iv) Other practical problems that make trial or a case easy, expeditious, and inexpensive

This factor expresses three interests: ease, time, and expense. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Regarding the ease of trial, there is only one defendant in this case, whereas there are four defendants in the companion case in the Southern District of Georgia, two of which are state institutions. *See Arenas v. Georgia Department of Corrections, et al.*, CV 4:16-320, 2017 WL 1754770, at *1 (S.D. Ga. May 3, 2017). Maintaining venue in this Court would make trial of the claims at issue in this case easier than in the Southern District of Georgia because of the narrowed focus on Defendant's specific acts, as opposed to litigating various claims against multiple defendants, some of which are state institutions, with more complicated issues. *See id.* Likewise, the narrowed focus of this case, compared to that of the companion case in the Southern District of Georgia, indicates that maintaining venue in this Court will result in a relatively shorter trial than if this case is transferred. *See id.*

Furthermore, in special circumstances, this Court may consider the timing of a motion to transfer, as well as if the party requesting transfer has done so with reasonable promptness, when weighing the potential prejudice to the parties from a proposed transfer. *See In re Horseshoe Entertainment*, 337 F.3d at 434; *Peteet*, 868 F.2d at 1436; *Mohamed*, 90 F. Supp. 2d at 760. One standard for assessing whether a party requesting transfer has done so with reasonable promptness is whether the party resisting transfer can show either that the transfer motion is a

dilatory tactic or that they would be prejudiced due to the delay in bringing the motion. *Mohamed*, 90 F. Supp. 2d at 760. In this case, Defendant waited until after seven months of discovery had passed before filing Defendant's Motion to Transfer Venue and Brief in Support. Docket no. 27 at 2. By that time, Plaintiff already retained Texas-based expert witnesses to testify at trial based on an understanding that Defendant wished to proceed in this Court. *Id.* at 3. Transferring this case to the Southern District of Georgia would prejudice the Plaintiff by undermining her retention of local experts and delaying the litigation process even further.

Additionally, Defendant now files his Motion to Transfer Venue after he previously did not wish to return to Georgia. At a Status Conference held on April 13, 2017, before this Court, Plaintiff stated that the parties had an initial plan to consolidate this case with the companion case in the Southern District of Georgia. After Defendant was served and filed his answer with this Court, however, he no longer wanted to return to Georgia. Now, after the Court has ruled on some matters in this case, Defendant seeks to transfer venue. The timing of Defendant's motion cast against his initial desire to keep the case with this Court weighs against transfer.

Plaintiff also argues that Defendant has purposefully sought transfer to the Southern District of Georgia because "parallel motions to dismiss are still pending" in the companion case. Docket no. 27 at 8. Plaintiff alleges that, because this Court denied Defendant's motion to dismiss under Fifth Circuit law, Docket no. 18, Defendant's motion to transfer is meant to obtain a second chance at dismissing the case under Eleventh Circuit law. Docket no. 27 at 8. Plaintiff would undoubtedly be prejudiced if, after this Court denied Defendant's previous motion to dismiss, this case were to be transferred to the Southern District of Georgia and subsequently a motion to dismiss were to be granted.

Finally, the Court must consider trial expenses. Defendant points out that travelling to the Southern District of Georgia is not inconvenient for Plaintiff because Plaintiff will "already be required to travel to that district for a trial of [the companion] case." Docket no. 24 at 7. However, the total expense associated with this litigation will surely increase if this case were to be transferred to the Southern District of Georgia. Plaintiff's witness costs will increase as she will have to either transport current witnesses to Georgia or retain Georgia experts to testify at trial, and the delay of the proceedings will lead to an increase in the costs of attorney's fees for both parties. *See* Docket no. 27 at 12–13. Under the totality of the circumstances, the Court finds that, at this late of a point in the litigation, the interests of ease, time, and expense all weigh against transfer.

### c) The Public Interest Factors

#### i) Administrative difficulties flowing from court congestion

"Generally, this factor favors a district that can bring a case to trial faster." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012). The current state of the litigation in this Court is farther along than the companion case in the Southern District of Georgia. This case has conducted discovery for the past seven months, has a discovery cut-off date of October 27, 2017, and a set trial date of February 20, 2018. Docket no. 19. The companion case in the Southern District of Georgia has neither a scheduling order nor a trial date, and currently has pending a motion to dismiss. Docket no. 27 at 3. Maintaining venue in this Court will bring Plaintiff's claims against Defendant to trial sooner than transferring this case to the Southern District of Georgia. *See* Docket no. 27 at 3. Accordingly, the Court finds this factor weighs against transfer.

15

### ii) Local interest in having localized interests decided at home

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09 (1947)). Defendant contends that "[c]itizens of San Antonio do not have any interest in the practices of a Georgia prison or whether the application of those practices in this case deprived a Georgia inmate of his constitutional rights," and that "Georgia citizens have a strong interest in being able to assess the constitutionality of the conduct of its State employees and the practices of its State agencies." Docket no. 24 at 8. Plaintiff responds that "[t]he people of Central Texas certainly have an interest in how one of their own community members is treated when he leaves the state's borders," and that because Defendant is now employed as a correctional officer in Texas, "Texans now have a grave interest in how he performs his duties as a prison guard." Docket no. 27 at 6.

Although Defendant's assertion that citizens of Georgia have a strong interest in assessing the practices and conduct of state agencies and employees is true, that public interest is not unique to Plaintiff's claims against Defendant individually. Because of Plaintiff's companion case against other officers and the Georgia Department of Corrections and Georgia Correctional Healthcare currently pending in the Southern District of Georgia, citizens of Georgia will retain the ability to assess the constitutionality of the practices and conduct of their state agencies and employees regardless of whether this case remains in this Court or is transferred to the Southern District of Georgia. Furthermore, citizens of both states have at least some degree of interest in adjudicating this dispute because the incident in question involved a resident of Texas. Therefore, because citizens of both Texas and Georgia have legitimate public

16

interests in resolving this case, this Court finds this factor neutral to transfer. *See Walker*, 2017 WL 2829702, at *3 (deciding the local interest factor as neutral where citizens of both venues had interest in deciding the case).

### iii) Familiarity of the forum with the law that will govern the case

Defendant asserts that "it is unclear whether the 'clearly established' prong of the qualified immunity analysis would require this Court to look at the Fifth Circuit's cases, the Eleventh Circuit's cases, or both," but concludes that because "the Southern District of Georgia will be resolving the qualified immunity issue in the companion case based on Eleventh Circuit case law, it makes sense for that court to determine all of the qualified immunity issues that stem from Tavara's suicide." Docket no. 24 at 9. Plaintiff responds that Defendant "made a choice of law to apply the Fifth Circuit's precedent, and the Fifth Circuit's law is now [the] 'law of the case.'" Docket no. 27 at 7. "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct 709, 716 (2016) (quoting *Pepper v. United States,* 562 U.S. 476, 506 (2011)) (internal quotation marks omitted).

Defendant moved, under Fifth Circuit law, to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and also asserted his defense of qualified immunity. Docket no. 5 at 3–10. In support of the Motion to Dismiss, Defendant cited to numerous Fifth Circuit cases on both the Rule 12(b)(6) and qualified immunity issues. *See* Docket no. 5 at 5–7. This Court denied Defendant's Motion to Dismiss, Docket no. 18, analyzing both the deliberate indifference claim and the qualified immunity defense under applicable Fifth Circuit case law. Docket no. 18 at 5–

17

13. The procedural posture of this case has thus established Fifth Circuit law as the "law-of-the-case," and the ultimate merits of the claims and defenses asserted in this case should continue to be decided under Fifth Circuit law. *See Musacchio*, 136 S. Ct at 716. Therefore, the Court finds that this factor weighs against transfer.

### iv) Avoidance of unnecessary problems of conflicts of laws of the application of foreign law

Defendant argues that the Southern District of Georgia should determine all of the qualified immunity issues in both cases, "[o]therwise the two courts could potentially reach opposite conclusions or factual findings on the qualified immunity issue." Docket no. 24 at 9. However, as discussed above, because Defendant approached the claims and defenses at issue in this case under Fifth Circuit law, Fifth Circuit law is now the law-of-the-case. *See Musacchio*, 136 S. Ct at 716. If Defendant wished to proceed under Eleventh Circuit law, he was obligated "to call the applicability of another state's law to the [C]ourt's attention in time to be properly considered." *See Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987). Defendant did not do so, and instead chose to proceed under Fifth Circuit law. *See* Docket no. 5 at 3–10. Transferring this case to the Southern District of Georgia thereby risks creating a conflict of laws in the application of foreign law because the Southern District of Georgia would be obligated to apply two different circuit precedents to the overlapping issues of these two cases. Accordingly, the Court finds that this factor weighs against transfer.

## CONCLUSION

In accordance with 28 U.S.C. § 1404(a), because both the private and public interest factors weigh against transfer, and because retaining this case in this Court is in the interest of justice, this Court hereby **DENIES** Defendant's Motion to Transfer Venue. Docket no. 24.

It is so ORDERED.

SIGNED this 12th day of October, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE