# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| MARIA ARENAS, individually, | * |
| Plaintiff, | * |
| v. | * CIVIL ACTION FILE |
|  | * No. 5:16-CV-1203-XR |
| JOHN CALHOUN, in his individual capacity, | * |
| Defendant. | * |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**COMES NOW** Defendant John Calhoun, by and through the undersigned counsel, the Attorney General for the State of Georgia, and, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, objects and responds to Plaintiff's First Set of Interrogatories (collectively, "Interrogatories," and each individually, "Interrogatory") as follows:

## GENERAL OBJECTIONS

1. Defendant objects to the Instructions and Definitions in the Interrogatories, and to each Interrogatory, to the extent that they purport to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Local Rules and Orders of the Court.

2. Defendant objects to each Interrogatory that seeks information or material that is not relevant to a claim or defense in this case and proportional to the needs of the case.

3. Defendant objects to each Interrogatory to the extent that it seeks information or documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege or legal protection from disclosure. Any disclosure by Defendant of such protected material is inadvertent and is not a waiver of an applicable right or privilege.

4. Defendant objects to each Interrogatory to the extent that it seeks information not in Defendant's possession, custody, or control.

5. Defendant objects to each Interrogatory on the grounds that it is not limited to a time period relevant to this case.

6. Defendant's investigation and development of the facts and circumstances relating to this action is ongoing. The responses and objections herein are made without prejudice to, and are not a waiver of, Defendant's right to supplement, clarify, revise, or correct any of the responses and objections herein based on information or documents obtained or made available in discovery, and to use and rely on such other facts or documents in discovery and at trial.

7. Defendant incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

1. Please identify all persons whom Defendant knows to have knowledge of any fact related to any claim or defense in this lawsuit, and provide a detailed description of the issues and facts that each person has knowledge of.

**Response: Defendant Calhoun objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, invades the work product doctrine, calls for information or materials obtained or generated in anticipation of litigation or preparation for trial, and seeks information that is specifically protected from discovery pursuant to O.C.G.A. § 50-21-26(d). Subject to the foregoing objections, and without waiving same, Defendant Calhoun states that the incident report and witness statements (attached hereto) reflect the persons with knowledge, along with the knowledge of each person. Defendant Calhoun also states that Warden Williams and Unit Manager Smokes may have knowledge of the incident due to their positions at Smith State Prison (Warden and the Unit Manager in charge of segregation, respectively).**

2. If you contend that some other person or legal entity is, in whole or in part, liable to the plaintiff in this matter, identify that person or legal entity and provide a detailed description of the basis of that liability.

**Response: Defendant Calhoun does not have responsive information at this time. Defendant Calhoun denies any implication in this Interrogatory that he is liable to Plaintiff in this action.**

3. Please identify all persons that Defendant expects to call to testify on Defendant's behalf at trial.

**Response: Defendant objects to this Interrogatory on the grounds that it invades the work product doctrine, seeks the mental impressions of counsel, and calls for information obtained or generated in anticipation of litigation or preparation for trial. Subject to these**

objections, and without waiving same, Defendant states that his counsel has not decided what witnesses will be called at trial.

4. Please separately identify and provide a detailed description of the substance of every communication and document that you are aware of that relates to the incidents at issue in this lawsuit.

**Response: Defendant Calhoun objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, invades the work product doctrine, calls for information or materials obtained or generated in anticipation of litigation or preparation for trial, and seeks information that is specifically protected from discovery pursuant to O.C.G.A. § 50-21-26(d). Defendant further objects to the request for a "detailed description of every communication and document" as overbroad and unduly burdensome. Subject to the foregoing objections, and without waiving same, Defendant Calhoun is aware only of the witness statement and Internal Affairs witness statement that he provided in connection with the incident.**

5. Please identify and describe in detail all laws, statutes, regulations, policies, procedures, training, meetings, documents, and oral and written communications in place between January 1, 2008 to the present that you are aware of that relate to suicide prevention at the Smith State Prison.

**Response: Defendant Calhoun objects to this request as vague and overly broad. Subject to these objections, and without waiving same, Defendant Calhoun was required to attend (and did attend) annual suicide prevention training while he was employed with the Georgia Department of Corrections. Additionally, Defendant Calhoun recalls that suicidal**

**inmates at Smith State Prison were required to be checked every fifteen minutes instead of every thirty minutes.**

6. Describe in detail how potentially suicidal inmates were monitored in the Smith State Prison in 2014.

**Response: If an inmate at Smith State Prison was deemed suicidal, the inmate would be placed on "suicide watch," such that the inmate would be checked every fifteen minutes instead of every thirty minutes.**

7. Please describe in detail any events (including, but not limited to, completed and attempted suicides) in the Smith State Prison involving suicidal inmates since January 1, 2008 that have resulted in the inmates' deaths or injuries. If you personally participated in any events related to these suicide deaths please separately identify those deaths and describe in detail your involvement.

**Response: Defendant Calhoun objects to this request on the grounds that it seeks information that is not relevant to a claim or defense in this case, the request is not proportional to the needs of the case, and the request is instead overbroad and unduly burdensome. Defendant Calhoun further objects to this Interrogatory to the extent that it seeks information that is not within his possession, custody, control, or personal knowledge. Subject to these objections, and without waiving same, Defendant Calhoun states that, while he was at Smith State Prison, he was personally involved in events related to three attempted suicides prior to Mr. Tavera's suicide. More specifically, he found one inmate lying on the ground with one end of his bedsheet tied around his neck and the other end tied to the window of his cell. That particular inmate told Defendant Calhoun that he had**

faked his suicide so that he could "get some fresh air." The other two inmates attempted suicide by cutting their wrists. Defendant Calhoun does not recall the names of the inmates, the specific dates of the incidents, or any other details about the incidents. Defendant Calhoun does not have personal knowledge of any other suicides or attempted suicides at Smith State Prison.

8. Please describe in detail all complaints regarding the treatment of inmates made against any of the officers named in Plaintiff's complaint since January 1, 2008.

**Response: Defendant Calhoun objects to this request in that it seeks information that is not relevant to and claim or defense in the case and is not proportional to the needs of the case. Defendant Calhoun further objects to this request to the extent that it seeks information that is not within his possession, custody, control, or personal knowledge. Subject to these objections, and without waiving same, Defendant Calhoun recalls that two inmates filed grievances against him regarding Mr. Tavera's suicide. To the best of his recollection, one grievance falsely alleged that Defendant Calhoun had refused to turn off the light in Mr. Tavera's cell. Defendant Calhoun does not recall what the other grievance was about, nor does he recall any other details about the two grievances.**

9. Please identify all persons disciplined concerning Mr. Tavera'a death, if any, and the reasons for imposing such disciplinary action (if any).

**Response: Defendant Calhoun is not aware of any person being disciplined in connection with Mr. Tavera's suicide.**

10. Please identify every individual who had contact with Mr. Tavera while he was incarcerated at the Smith State Prison on December 7, 2014, including, but not limited to, all

inmates incarcerated in parts of the prison with Mr. Tavera. (This interrogatory specifically requests the identity of the inmates in neighboring cells).

**Response: Defendant Calhoun does not have any responsive information. More specifically, Defendant Calhoun can no longer recall the identities of the inmates in Mr. Tavera's neighboring cells or the other prison personnel that would have been in the lockdown unit that day.**

11. For the period January 1, 2008 to the present, identify all inmate deaths (not including those identified in interrogatory 7) that occurred at the Smith State Prison. A response to this interrogatory should identify the name of the inmate, the date of the death, the location in the prison of the death, and the manner of death (such as "suicide" or "homicide"). This request specifically includes information regarding inmates who suffered illness or injury in the prison but were pronounces dead at a hospital as a result of that injury or illness.

**Response: Defendant Calhoun objects to this Interrogatory on the grounds that the information requested is not relevant to a claim or defense in the case and is not proportional to the needs of the case. Defendant Calhoun further objects to this Interrogatory to the extent that it seeks information that is not within his possession, custody, control, or personal knowledge. Subject to these objections, and without waiving same, Defendant Calhoun does not have any knowledge of any other inmate deaths occurring while he was at Smith State Prison.**

12. Please describe in detail any suicide prevention training provided to you at the Smith State Prison from January 1, 2008 to the present.

**Response: During his employment at Smith State Prison, Defendant Calhoun was required to, and did, attend annual suicide prevention training. He believes the training was provided by his supervisors and included a discussion of the various warning signs that an inmate might be suicidal. He recalls attending this annual training in January 2014.**

13. Identify all steps you took to protect Richard Tavera from suicide.

**Response: Defendant Calhoun objects to this request as vague and ambiguous. Subject to these objections, and without waiving same, I banged on the window to the cell and tried to get Mr. Tavera to respond. I also immediately reported the situation over the radio and requested assistance approximately four times over the radio. Once backup arrived, I entered the cell with several other officers and helped release Mr. Tavera. I then operated a video camera while some of the other officers performed CPR on Mr. Tavera.**

14. Identify all persons who authorized Richard Tavera's placement in the cell he was housed in on December 7, 2014 and describe in detail the basis for each placement.

**Response: Defendant Calhoun does not have information responsive to this request.**

15. Please identify all investigations conducted into the death of Richard Tavera. This interrogatory includes all internal affairs, outside agency, after action reviews, suicide prevention reviews, medical peer reviews, and any other investigation that took place due to Richard Tavera's death.

**Response: Defendant Calhoun objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, invades the work product doctrine, calls for information or materials obtained or generated in anticipation of litigation or preparation for trial, and seeks information that is specifically protected from**

discovery pursuant to O.C.G.A. § 50-21-26(d). Defendant Calhoun further objects to this Interrogatory to the extent that it seeks information that is not within his possession, custody, control, or personal knowledge. Subject to these objections, and without waiving same, Defendant Calhoun is aware only of a Georgia Department of Corrections Internal Affairs investigation.

16. If you contend you are entitled to qualified immunity, please describe in detail the factual basis for your defense.

**Response: Defendant Calhoun responded immediately upon discovering Mr. Tavera hanging in his cell by calling for additional officer assistance. Defendant Calhoun was trained not to enter an inmate's cell alone for safety reasons, including in instances such as this one. Additionally, he had seen inmates fake suicide when he served as a correctional officer at Guantanamo Bay as well as Smith State Prison. All of those incidents occurred prior to Mr. Tavera's suicide. As a result, when Defendant Calhoun discovered Mr. Tavera, he did not know whether the suicide was real or fake, and so he responded immediately in a manner consistent with his training. Defendant Calhoun, accordingly, did not enter the cell until other officers had arrived as backup. He was not aware of any law saying that the training he received and the actions he took would amount to a violation of Mr. Tavera's rights.**

17. Please identify all jobs you have held in the fields of law enforcement or corrections. A response to this interrogatory should identify the name of the agency you worked for, your job title, the time period you worked for the agency, and the address where you worked.

**Response: From approximately January 2007 to August 2007, Defendant Calhoun was deployed as a Naval correctional officer at Guantanamo Bay. Defendant Calhoun later served as a correctional officer with the Georgia Department of Corrections at Smith State Prison from approximately March 2012 through May 2012 and January 2014 through 2015. Smith State Prison is located at 9676 Hwy 301 North, Glennville, GA 30427. Currently, Defendant Calhoun is a correctional officer with the Texas Department of Corrections at the McConnell Unit, which is located at 3001 South Emily Drive, Beeville, TX 78102. Defendant Calhoun has been in his current position since approximately November 2015.**

18. Please identify your net worth.

**Response: Defendant Calhoun objects to this request on the grounds that it is not relevant to any claim or defense in the case and is not proportional to the needs of the case.**

19. Identify all accounts you control that may have electronically stored information related to your employment with Smith State Prison. This interrogatory specifically calls for all work and personal email accounts (which should be identified with the email address), all social media accounts (including Facebook, Instagram, Twitter, Snapchat, and Myspace), and any phone numbers you send or receive texts from (which should include the phone number and service provider).

**Response: Defendant Calhoun did not have a work email account when he was employed at Smith State Prison. Instead, any work-related emails would have been sent to his personal email account, john.calhoun28@yahoo.com.**

Respectfully submitted,

| | |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| KATHLEEN M. PACIOUS<br>Deputy Attorney General | 558555 |
| ROGER CHALMERS<br>Senior Assistant Attorney General | 118720 |
| *Ellen Cusimano*<br>ELLEN CUSIMANO<br>Assistant Attorney General<br>Pro Hac Vice | 844964 |

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

Ellen Cusimano
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
(404) 657-4355
ecusimano@law.ga.gov

## STATEMENT PURSUANT TO LOCAL RULE CV-33

I hereby certify, pursuant to Local Rule CV-33(a) of the Western District of Texas, that properly executed answers will be served on Plaintiff not later than 21 days of service of these answers.

*Ellen Cusimano*
ELLEN CUSIMANO    844964
Assistant Attorney General
Pro Hac Vice

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on this day, served the foregoing **DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTRERROGATORIES** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Jeff Edwards, Esq.
Scott Medlock, Esq.
David James, Esq.
Mike Singley, Esq.
The Edwards Law Firm
The Haehnel Building
1101 E. 11th Street
Austin, TX 78702

This 8th day of June, 2017.

*Ellen Cusimano*
ELLEN CUSIMANO          844964
Assistant Attorney General
Pro Hac Vice