# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| MARIA ARENAS, individually, § § *Plaintiff*, § § v. § § JOHN CALHOUN, in his individual § capacity, § § *Defendant*. § | Civil Action No. SA-16-CV-1203-XR |

## ORDER

On this date, the Court considered the status of the above captioned-case. After careful consideration, the Court hereby DENIES Plaintiff's Motion for Reconsideration (Docket no. 51).

## BACKGROUND

### I. Factual Background

Plaintiff Maria Arenas is the mother of Richard Tavera, deceased. Docket no. 1 at 1. Tavera had a history of severe mental illness, including civil commitment and attempted suicide. *Id.* at 2–3. On December 7, 2014, Tavera, while incarcerated at Smith State Prison in Tattnall County Georgia, committed suicide. *Id.* at 2.

Defendant John Calhoun was employed as a correctional officer by Smith State Prison at the time of the incident. *Id.* at 1. Plaintiff alleges that Defendant witnessed Tavera attempting to hang himself by tying one end of his bedsheet around a sprinkler on the ceiling of his cell and the other end around his neck. *Id.* at 3. Plaintiff alleges that, although Defendant saw Tavera beginning to take his own life, Defendant did not intervene to save him, and instead he stood

1

back and watched. *Id.* Plaintiff alleges that Defendant called other officers, but that Defendant and the three other officers who appeared did not open the door until seven minutes after Tavera began to attempt suicide.

Defendant argues that after he discovered Tavera attempting suicide, he immediately called for backup, obtained a key to the cell, and entered the cell after his supervisors determined it was safe to enter. *Id.* Defendant alleges that he began his shift on December 7, 2014, at around 6:00 p.m. *Id.* at 5. Prior to this shift, Defendant alleges he had never seen Tavera or interacted with him. *Id.* Defendant alleges he had no knowledge of Tavera's attempted suicide in 2008, his mental illnesses, or why Tavera was in administrative segregation, other than the fact that the sheet outside of Tavera's cell stated "pending investigation." *Id.* at 6. Plaintiff alleges that Defendant knew that Tavera was "depressed" and had been in solitary confinement for several days. Docket no. 39 at 3.

Defendant states he conducted rounds in the dormitory every thirty minutes, as required by Georgia Department of Corrections ("GDOC") policy. Docket no. 34 at 6. During one of those rounds, Defendant allegedly asked Tavera how he was doing, but Defendant does not recall Tavera's exact response. *Id.* Defendant, however, states that "nothing about the response caused him any concern or caused him to believe Tavera might be suicidal." *Id.* Plaintiff, on the other hand, states that when Defendant first observed Tavera, he spoke with Tavera and observed him to appear "depressed just by his demeanor." Docket no. 39 at 6.

Defendant, based on surveillance video of the prison facility, states that at 22:49 that night, he looked through the window in Tavera's cell door and saw a sheet, with one end tied around a sprinkler head and the other end tied around Tavera's neck. Docket no. 34 at 6; Prison

2

Video at 22:49. Defendant alleges that he was unable to see Tavera's feet through the window and did not know if Tavera's feet were on the bed, a pile of books, "or any other object that would have kept him from actually hanging." Docket no. 34 at 6. Defendant argues he did not know whether the suicide attempt was "fake" or "genuine." *Id.* at 6–7.

Defendant alleges that, upon observing the scene, he immediately called for backup assistance on his radio four times. *Id.* at 7. Defendant states Officer Adam Haas responded to his fourth call, told Defendant assistance was on the way, and relayed the emergency to Defendant's supervisors. *Id.* Defendant then allegedly went to retrieve the key to the dormitory cells, but the officer on duty at the control room allegedly inadvertently gave Defendant the wrong key, of which Defendant was unaware at the time. *Id.*

Defendant states that at 22:53, he placed the key on his desk and wrote some notes, and one minute later, Sgt. Shelby arrived. *Id.*; Prison Video at 22:53:02. Defendant argues that Sgt. Shelby banged on the cell door and yelled at Tavera for a response for ten seconds. Docket no. 34 at 7. At this point, Officer Haas arrived at the dorm, and shortly thereafter, Lt. Dickson arrived. *Id.* at 8. Lt. Dickson allegedly looked in the cell, assessed the situation, and instructed the officers to open the cell door. *Id.* Defendant states that, following unsuccessful attempts to unlock the cell, he realized he must have the wrong key, and then ran back to the control room. *Id.* After Defendant returned with the correct key, the surveillance video shows that the cell door was opened at 22:56:07. Prison Video at 22:56:07. Defendant alleges he then entered the cell with the other officers to remove Tavera from the noose and place him on the floor. Docket no. 34 at 8. Officer Haas and Sgt. Shelby allegedly took turns performing CPR, to no avail, while Lt. Dickson notified others, including EMS, about the suicide. *Id.*

3

Defendant states Sgt. Mitchell arrived with an AED unit, and the officers took turns using it on Tavera, to no avail. *Id.* at 8–9. EMS allegedly arrived at 11:19 p.m. *Id.* at 9. After Tavera was removed from the noose, Defendant allegedly operated a hand-held camera to capture the officers' actions in accordance with SSP policy. *Id.*

Defendant alleges that he did not enter Tavera's cell because it was unsafe and doing so would have violated GDOC policy. *Id.* Specifically, Defendant states that SSP has a policy and practice that forbids officers from entering an inmate's cell alone. *Id.* at 10. Officers must wait until a sufficient number of officers are present to safely enter the cell. *Id.* at 10–11. Although GDOC policy allows two officers to enter an administrative segregation cell, Defendant states that the actual practice is to wait until multiple officers are on the scene. *Id.* at 11.

Plaintiff, on the other hand, states that GDOC policy requires officers who come upon a suicide to "immediately cut down the hanging inmate." Docket no. 39 at 3. Plaintiff further argues that Defendant did absolutely nothing, other than talk on the radio and complete paperwork, after he found Tavera taking his own life and while he asphyxiated. *Id.* at 7. Plaintiff argues that Defendant did nothing until there were four officers present, did not enter the cell until seven minutes after Tavera began his suicide attempt, and took another minute to untie the ligature and lower Tavera to the ground. *Id.* at 8.

## II. Procedural History

On November 28, 2016, Plaintiff filed suit against Defendant, in his individual capacity, in this Court under 42 U.S.C. § 1983, alleging that Defendant's inactions related to Tavera's suicide constituted deliberate indifference and violated Tavera's Eighth Amendment rights.[1] *Id.*

---

[1] As stated in the courts' March 20, 2017, Order (Docket no. 18), although Plaintiff's complaint alleges that Defendant is liable for violating Tavera's Eighth and Fourteenth Amendment rights, Plaintiff does not appear to invoke substantive rights under the Fourteenth

at 4. Because Defendant has since moved from Georgia to Texas, venue is proper in this Court under 28 U.S.C. § 1391(b)(1). Plaintiff has also filed a companion suit against Defendant's supervising officers in the Southern District of Georgia. *Arenas v. Georgia Dep't of Corr., et al.*, CV 4:16-320, 2017 WL 1754770, at *1 (S.D. Ga. May 3, 2017).

On November 29, 2017, Defendant filed his Motion for Summary Judgment. Docket no. 34. On February 13, 2018, the Court granted Defendant's motion and dismissed Plaintiff's claims with prejudice. Docket no. 49. On March 6, 2018, Plaintiff filed her Motion for Reconsideration. Docket no. 51.

**ANALYSIS**

Plaintiff seeks reconsideration of this Court's order granting Defendant summary judgment on Plaintiff's Eighth Amendment claim. Plaintiff argues that the Court's granting of summary judgment was based on two material mistakes of law and fact. Docket no. 51 at 1.

Federal Rule of Civil Procedure 59(e) governs Plaintiff's motion for reconsideration. FED. R. CIV. P. 59(e). A motion to alter or amend judgment under this Rule "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). It "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Id.*

First, Plaintiff argues that there is a genuine dispute of material fact about the applicability of the policy such that the Court should deny summary judgment. Plaintiff argues that the policy entitled "Managing Potentially Suicidal, Self-Injurious and Aggressive Behavior,"

---

Amendment. The Court reads the complaint as invoking the Eighth Amendment's guarantees against cruel and unusual punishment, which are made applicable to the states by operation of the Fourteenth Amendment. *See Hinojosa v. Livingston*, 807 F.3d 657, 654–55 n.5 ("The complaint invokes the Fourteenth Amendment simply because it is by that provision—and that provision alone—that the Eighth Amendment's guarantee applies against the States; the Eighth Amendment does not apply of its own force to the States.").

which states that "[i]n the event that any inmate/probationer is found hanging, the correctional officer will call for backup by radio or telephone and then immediately cut down the hanging inmate/probationer and initiate CPR procedures," applied to Defendant when he discovered Tavera attempting suicide. Docket no. 51 at 4–6. The policy states it is a policy for prisoners "who are potentially suicidal, self-injurious, and/or physically aggressive."

Although Plaintiff's refined argument in her motion for reconsideration shows that the GDOC policy may have applied when Defendant found Tavera attempting suicide, as Plaintiff argues, a potential violation of the GDOC policy does not amount to a constitutional violation. *Gaddis v. Wilkinson*, No. 1:15-CV-20, 2016 WL 6272499, at *6 (E.D. Tex. Aug. 25, 2016), *report and recommendation adopted*, No. 1:15-CV-20, 2016 WL 6217159 (E.D. Tex. Oct. 24, 2016) (finding that a failure to follow an alleged jail policy at best only reflects "mere negligence and not deliberate indifference"). Plaintiff's argument that the GDOC policy may have applied under the circumstances does not, on its own, show a genuine dispute of material fact that Defendant acted with deliberate indifference under the Eighth Amendment when he discovered Tavera attempting suicide. Plaintiff's argument also fails to establish a manifest error of law or fact or present newly discovered evidence.

Second, Plaintiff argues the Court should have found that Defendant did not "respond reasonably" to Tavera's suicide and was "deliberately indifferent." Plaintiff argues that the Court need not find that Plaintiff did "nothing" after he discovered Tavera attempting suicide, but rather that Defendant disregarded the "risk by failing to take reasonable measures." *Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018). *Jones* specifically addresses an Eighth Amendment claim over proper medical treatment, and as the Court pointed out in its

previous Order, in these types of cases, a plaintiff "must show that officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 759. Plaintiff still presents no evidence that Defendant refused to respond to Tavera's suicide when he discovered it, ignored the suicide attempt, intentionally treated Tavera incorrectly, or acted in such a way to demonstrate a wanton disregard for the risk to Tavera's life.

Plaintiff also argues that Defendant's conduct even satisfies the "do nothing" standard because Defendant "literally did nothing to help [Tavera] for a crucial six minutes." Docket no. 51 at 8. Plaintiff's argument, however, restates the same factual allegations that the Court considered when it ruled on Defendant's motion for summary judgment. The Court evaluated the parties' arguments under the proper Eighth Amendment standard. As the Court previously stated, Plaintiff only presented evidence that Defendant perhaps acted with negligence, or at most gross negligence, by taking certain actions that did not avert the threat to Tavera's life and that Plaintiff alleges were insufficient. Plaintiff does not present any newly discovered evidence on Defendant's response to discovering Tavera attempting suicide, nor does her argument establish any manifest error of law or fact.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration (Docket no. 51) is hereby DENIED.

It is so ORDERED.

SIGNED this 3rd day of April, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE